IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LISANDRO JONATHAN DARIN,

Petitioner,

v.

LUA CECILIA OLIVERO-HUFFMAN,

Respondent.

CIVIL NO. 12-1121 (CVR)

**OPINION AND ORDER**

**PROCEDURAL BACKGROUND**

On February 11, 2012, Lisandro Jonathan Darín (hereafter "Petitioner") filed a "Verified Petition for Return of Child to Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent" against Lua Cecilia Olivero-Huffman (hereafter "Respondent"). (Docket No. 1). The Petition was filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (hereafter "the Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, as implemented by the International Child Abduction Remedies Act (hereafter "ICARA"), 42. U. S. C. §§ 11601 *et seq*. Petitioner claims his son Lucio Alejandro Angel Darín- Olivero (hereafter the "child") was wrongfully removed from his habitual place of residence in Argentina or retained in Puerto Rico by his mother without authorization and kept from returning home to Argentina.

In essence, Petitioner avers that he along with Respondent are the natural parents of the child who was born in Buenos Aires, Argentina on April 20, 2008. The child was living with Petitioner and Respondent at his residence in Buenos Aires, Argentina since they had joint custody. Thus, Petitioner claims the child's habitual residence was in Buenos

Aires, Argentina. During the month of February 2011, Respondent and Petitioner traveled together to Orlando and Puerto Rico for vacation purposes and were due to return to Argentina on March 2, 2011[1].  While vacationing in Puerto Rico, Respondent informed Petitioner that she would remain in Puerto Rico with the child. Petitioner remained in Puerto Rico until July 2011 when his visa was close to expire and he returned to Argentina without his son. Petitioner claims he has been trying to convince Respondent to return to Argentina with the child but Respondent has refused to do so. Since the child is under the age of sixteen (16) and was removed by Respondent from his habitual residence in breach of Petitioner's custody rights, which right he was exercising at the time of wrongful removal or retention of the child, Petitioner claims he is entitled to the civil remedies provided by the Hague Convention. Petitioner avers he never acquiesced or consented to the retention of the child in Puerto Rico. (Docket No. 1).

On February 24, 2012, this case was referred to a Magistrate Judge for further proceedings and report and recommendation.  (Docket No. 5).  On February 27, 2012, this case was referred to the undersigned. (Docket No. 7).

On February 28, 2012, an Order was issued by this Magistrate Judge in which Respondent was ordered to appear before the Court on March 22, 2012, accompanied by the child, for a hearing to show cause why the child has been retained and kept from returning to Argentina with Petitioner.  (Docket No. 8).

---

[1] Even though Petitioner refers in the petition to March 2, 2012, it seems to be a typo inasmuch as the evidence at the trial shows the parties traveled to Orlando and Puerto Rico on 2011 and were due to return to Argentina on March 2, 2011 and not 2012.

Lisandro Jonathan Darin v. Lua Cecilia Olivero-Huffman
Civil No. 12-1121 (CVR)
Opinion and Order
Page 3

On March 22, 2012, a Status Conference was held in lieu of the show cause hearing as agreed by the parties.  Additional time was needed for Petitioner to come to Puerto Rico for the hearing and for the parties to meet and submit some stipulations. The show cause hearing was set for July 17, 2012 by agreement of all the parties. (Docket No. 26).

On same day, the Court issued an immediate order of provisional conditions prohibiting the removal of the child from this Court's jurisdiction until further Order of the Court.  (Docket No. 19 ).   In addition, on the same day, the parties consented to proceed before this Magistrate Judge for all further proceedings, including the entry of judgment. (Docket Nos. 20, 21 and 22).

On March 30, 2012, Respondent filed her answer to the petition contending the petition should be dismissed because in this case there was no unlawful retention or removal of the child by Respondent. The parties traveled together with the child to Puerto Rico and stayed voluntarily for a period of several months. Thus, the child was not unlawfully removed.  Petitioner was exercising his joint custody rights with Respondent when, prior to his departure from Puerto Rico to Argentina, he signed with Respondent an agreement before a Notary Public, dated July 7, 2011, in which Petitioner expressly consented to the child staying in Puerto Rico for an indefinite period of time, under the care and supervision of Respondent. Therefore, there was no unlawful retention. Respondent avers the child became a habitual resident of Puerto Rico by the express consent of Petitioner and the child's substantial involvement with his maternal family, school services,

<u>Lisandro Jonathan Darin v. Lua Cecilia Olivero-Huffman</u>
Civil No. 12-1121 (CVR)
Opinion and Order
Page 4

medical services and community relations and surroundings in Puerto Rico since his arrival in February 2011.  (Docket No. 23).

After requesting an extension of time, the parties submitted on May 17, 2012 a "Joint Conference Report" which includes the parties' claims and defenses, the issues presented by the case, some factual stipulations, among others.  (Docket No. 33).

On July 17 and 20, 2012 and on August 2 and 8, 2012, the trial was held before this Magistrate Judge.  Respondent and Petitioner were represented by their respective counsel and were assisted by an official court interpreter.  Petitioner testified on his own behalf and called Respondent as a witness.  In turn, Respondent testified on her own behalf.  (Docket Nos. 50, 52, 53 and 55).[2]  The parties entered into several stipulations which were filed with the court and are referenced herein below.  (Docket No. 54).  In addition, several Joint Exhibits were submitted and some other exhibits were individually submitted by the parties and admitted into evidence. (Docket No. 56).[3]

---

[2] Respondent proposed Dr. Amaryllis R. Muñoz-Colón, clinical psychologist, as an expert witness proffering she would testify as to the child's habitual residence and his adjustment in Puerto Rico. Petitioner opposed Dr. Muñoz-Colón's testimony and report claiming her report dealt with custody of the child which is not proper in a case under the Hague Convention.  (Respondent's Id. B is in the Spanish language, the translation is pending).  After hearing the parties and reading Dr. Colón-Muñoz' report, the undersigned denied Respondent's expert witness testimony because her report purports to opine on the ultimate facts to be determined by this court as the trier of fact. Further, the report demonstrates a partisan view, rather than an unbiased explanation or conclusion inasmuch as Dr. Colón-Muñoz' report recognizes she did not interview Petitioner nor does it explain in full the child's living situation and surroundings in Argentina. To the extent the expert purports to opine on the ultimate facts or state legal conclusions on the habitual residence of the child, the opinion was rejected as intrusive of this court's responsibility to determine the facts, including the child's habitual residence immediately prior to the alleged wrongful removal and retention in Puerto Rico.

[3] At the conclusion of Petitioner's case in chief, Respondent presented a motion under Federal Rule of Civil Procedure 52 (c) for judgment on partial findings claiming Petitioner did not met his burden of establishing an unlawful retention of the child in Puerto Rico.  Petitioner opposed the motion. In order to expedite matters and in an abundance of caution, the undersigned at that time withheld the ruling on the motion until all evidence was submitted, as allowed by said Rule.

Lisandro Jonathan Darin v. Lua Cecilia Olivero-Huffman
Civil No. 12-1121 (CVR)
Opinion and Order
Page 5

## FACTUAL STIPULATIONS

The following stipulations were proposed by the parties (Docket No. 54) and are herein adopted as the Court's factual findings:

1.     Lisandro Jonathan Darín, Petitioner, and Lua Cecilia Olivero-Huffman, Respondent, are the natural parents of the child, who was born in Buenos Aires, Argentina on April 20, 2008.

2.     The child is citizen of the United States of America and of the Republic of Argentina.

3.     In 2007, Respondent traveled to Argentina to study dance therapy.

4.     Respondent bought an apartment in Argentina together with her sister.

5.     In 2007, Respondent began a relationship with Petitioner and they began to live together in Respondent's apartment located in #3357 Sarmiento Street, 1st floor, Apt. D, Buenos Aires.

6.     During her pregnancy, Respondent traveled with Petitioner to Puerto Rico and returned to Argentina.

7.     After their child was born, they moved with the child to an apartment, which belongs to Petitioner's family and was located in Villa Luro neighborhood.

8.     The parties traveled with the child to Puerto Rico on December 11, 2008, and returned to Argentina on February 9, 2009.  While in Puerto Rico, they stayed at Respondent's mother's house located in #514 Sagrado Corazón Street, San Juan.

9.    The parties traveled with the child to Puerto Rico on March 24, 2009 for Respondent to take advantage of a work opportunity, and they returned to Argentina on August 7, 2009.  While in Puerto Rico, they stayed at Respondent's mother's house located in #514 Sagrado Corazón Street, San Juan.

10.   Respondent traveled alone with the child to Puerto Rico on January 19, 2010 under the terms agreed to and set forth in a Power of Attorney signed by the parties in Argentina, pursuant to which the child was authorized to travel to any country in the world accompanied by either of his parents, leaving the country and coming back when he/she considers it convenient, until the child becomes an adult.  Respondent and the child returned to Argentina on April 2, 2010.   While in Puerto Rico, they stayed at Respondent's mother's house located in #514 Sagrado Corazón Street, San Juan.

11.   Petitioner revoked the Power of Attorney which authorized either of child's parents to travel with the minor.

12.   In mid-2010, the parties separated, and Respondent moved back with the child to her apartment.

13.   The child began attending day care facility "Dulce de Leche", located near Respondent's apartment.

14.   On November 9, 2010, Respondent traveled to Puerto Rico alone and left the child with Petitioner under the agreement that the child would return under the care of Respondent upon her return to Argentina.

15.   The parties again moved in together and attempted a reconciliation.

16.   In late 2010, Respondent and her sister sold their apartment in Argentina.

17.   On January 31, 2011, the parties traveled to Orlando for vacation, and then traveled with the child to Puerto Rico on February 4, 2011.  Upon arriving in Puerto Rico the parties and their child again stayed in Respondent's mother house located in #514 Sagrado Corazón Street, San Juan.

18.   While in Puerto Rico in the first half of 2011, Respondent told Petitioner about her intentions to reside permanently in Puerto Rico with the child.

19.   Petitioner left Puerto Rico on July, 2011.

20.   Prior to Petitioner's departure to Argentina, Petitioner and Respondent subscribed and signed an affidavit on July 7, 2011, before Notary Public José Guillermo Pérez Ortíz.

21.   Since February 4, 2011, Respondent and child have been living at #514 Sagrado Corazón Street, San Juan, Puerto Rico.

22.   Since Petitioner's departure to Argentina he has had continuous and frequent communication with his son by the use of telephone and internet.

23.   On December 19, 2011, Petitioner filed an application to request remedies under the Hauge Convention on the Civil Aspects of International Child Abduction before the competent authorities in Argentina.

Lisandro Jonathan Darin v. Lua Cecilia Olivero-Huffman
Civil No. 12-1121 (CVR)
Opinion and Order
Page 8

24.    On February 21, 2012, Petitioner filed "Verified Petition for Return of Child to Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent" before the Federal Court for the District of Puerto Rico.

25.    The child is presently four (4) years and three (3) months old.

26.    At present, the child is covered by the Puerto Rico government health insurance program.

27.    During the 2011-2012 academic year, the parties' child had been attending school at "Escuela del Pueblo Trabajador" in Río Piedras, Puerto Rico, and is enrolled for the 2012-2013 school year at the same school.

## CONCLUSION OF LAW AND LEGAL ANALYSIS

### The Hague Convention

The Hague Convention is a multilateral international treaty on parental kidnaping to which the United States, Argentina, and Turkey, among others are signatories.

The goal of the Convention is to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." *See* Hague Convention, Oct. 25, 1980, preamble, T.I.A.S. no. 11670, 19 I.L.M. 1501, 1501.  The Convention reflects "a universal concern about the harm done to children by parental kidnaping and a strong desire among the Contracting States to implement an effective deterrent to such behavior." Feder v. Evans-Feder, 63 F.3d 217, 138 221 (3rd Cir. 1995).  The Convention is "designed to

restore the 'factual' status quo which is unilaterally altered when a parent abducts a child."
*Id*.

The Hague Convention applies where a child has been removed or retained away from his or her habitual residence in breach of the custody rights that the Petitioner (parent) was exercising at the time of the wrongful removal or wrongful retention. Hague Convention, Art. 3. The objects of the Convention are: (1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and (2) "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Hague Convention, Art. 1.

The United States has implemented the Hague Convention by enactment of the ICARA, 42 U.S.C. § 11601 *et seq.* ICARA vests state and district courts with concurrent jurisdiction over claims arising under the Convention and empowers those courts to order the return of wrongfully removed or retained children. See 42 U.S.C. § 11603. An ICARA hearing is not a custody hearing. *See* Blondin v. Dubois, 189 F.3d 240, 245 (2nd Cir. 1999) (under ICARA, a district court has "the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim"); Hague Convention, Art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue."). An ICARA proceeding merely determines which nation should hear the underlying custody claim. *See* Blondin, 189 F.3d at 245; Cerit v. Cerit, 188 F.Supp.2d 1239, 1243 (D. Hawaii 2002).

Lisandro Jonathan Darin v. Lua Cecilia Olivero-Huffman
Civil No. 12-1121 (CVR)
Opinion and Order
Page 10

A petition under the Hague Convention requires the Court to determine whether the child has been "wrongfully removed or retained" within the meaning of the Convention. Petitioner has the burden of proving, by a preponderance of the evidence, wrongful removal or retention. 42 U.S.C. § 11603(e)(1)(A).

Pursuant to Article 3 of the Hague Convention, removal is wrongful under the Convention if:

a)      it is in breach of the rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b)      at the time of the removal or retention those rights were actually exercised . . . or would have been so exercised but for the removal or the retention.

In applying this provision, a court must ask four questions.

(1)      When did the removal or retention at issue take place?

(2)      Where was the child habitually resident immediately prior to the removal or retention?

(3)      Did the removal or retention breach the Petitioner's rights of custody under the law of the habitual residence?

(4)      Was the Petitioner exercising those rights at the time of the removal or retention?

Mozes v. Mozes, 239 F.3d 1067, 1070 (9th Cir. 2001).

Therefore, a Petitioner establishes the elements of wrongful removal or retention by demonstrating by a preponderance of the evidence that:

(1)   the habitual residence of the child immediately before the date of the allegedly wrongful removal or retention was in the country to which return is sought;

(2)   the removal or retention breached the Petitioner's custody rights under the law of the child's habitual residence;

(3)   the Petitioner was actually exercising or would have been exercising custody rights of the child at the time of his or her removal or retention; and

(4)   the child has not attained the age of 16 years.

*See* Nicolson v. Pappalardo, 605 F.3d 100, 103 (1st Cir. 2010); Lops v. Lops, 140 F.3d 927, 936 (11th Cir. 1998); Pesin v. Osorio-Rodríguez, 77 F.Supp.2d 1277, 1284 (S.D.Fla.1999); Méndez-Lynch v. Méndez-Lynch, 220 F.Supp.2d 1347, 1357 (M.D. Florida 2002); González-Locicero v. Nazor Lurashi, 2004 WL 1202729 (D.P.R. 2004) (unpublished opinion).

Once the Petitioner meets the burden of proving wrongful removal or retention, the child must be returned unless the Respondent can establish by preponderance of the evidence one or more of four defenses:

(1)   the person having care of the child was not actually exercising the custody rights at the time of removal or retention, Hague Convention, Article 13a; or

(2)     the person having care of the child had consented to or subsequently acquiesced in the removal or retention of the child, Hague Convention, Article 13a; or

(3)     "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention, Article 13, unnumbered paragraph; or

(4)     the proceedings were commenced more than one year after the date of the wrongful removal or retention and "the child is now settled in its new environment." Hague Convention, Article 12.

Additionally, a court is not bound to order the return of a child if Respondent demonstrates by clear and convincing evidence that:

(5)     there is a grave risk that the child's return would "expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, Article 13b; or

(6)     return of the child would not be permitted by fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms. Hague Convention, Article 20.

Even if an exception is established, the Court has discretion to order the return of a child if return would further the aims of the Hague Convention. Miller v. Miller, 240 F.3d 392, 402 (4th Cir.2001); England v. England, 234 F.3d 268, 270-71 (5th Cir. 2000).

Furthermore, each exception is to be applied narrowly.  Rydder v. Rydder, 49 F.3d 369, 372 (8th Cir. 1995); 42 U.S.C. Section 1160(a)(4).

**Alleged Wrongful Retention or Removal**

We now proceed to apply the above principles to this case.  Three (3) of the threshold issues of any Hague Convention case are not in dispute in the instant case, to wit: the child is under 16 years of age;  Argentina and the United States became signatories to the Hague Convention prior to the retention of the child in this case; and Respondent recognized in her answer to the petition that Petitioner was actually exercising custody rights when the alleged wrongful retention or removal occurred.[4]  (Docket No. 23, p. 4, paragraph 3).

Thus, our main inquiry is mainly to determine whether the child's "habitual residence", immediately before the date of the alleged wrongful retention or removal, was in the country to which return is sought, namely, Argentina.

The Hague Convention does not define "habitual residence."  Nevertheless, the First Circuit in Nicolson v. Pappalardo, 605 F.3d at 104 noted that a majority of the circuits approach the question of habitual residence beginning "with the parents' shared intent or settled purpose regarding the child's residence."  However, the Circuit courts are divided on the extent that parental intent should factor into the acquisition of a habitual residence. The First, Second, Fourth and Seventh Circuits[5] place the primary focus upon parental

[4]  We note the date on which the removal or retention took place is not an issue in this case inasmuch as it is undisputed Petitioner left Puerto Rico to Argentina on July 2011 and left his son under the care and supervision of his mother after signing an affidavit, as explained in detail herein below.

[5] Zuker v. Andrews, 1999 WL 525936 (1st Cir. 1999) (unreported opinion); Gitter v. Gitter, 396 F.3d 124 (2d Cir. 2005); Maxwell v. Maxwell, 588 F.3d 245 (4th Cir. 2009); Koch v. Koch, 450 F.3d 703 (7th Cir. 2006); Mozes v. Mozes, 239 F.3d at 1067.

intent, following the Ninth Circuit's decision in <u>Mozes v. Mozes</u>, 239 F.3d at 1067.  The focus is on the parents' last shared intent in determining habitual residence.  <u>Koch</u>, 450 F.3d at 715 (same); <u>Gitter</u>, 396 F.3d at 131-133 (finding the <u>Mozes</u> opinion "particularly instructive" in determining habitual residence by considering the intentions of the parents as of the last time their intentions were shared).

Under the <u>Mozes'</u> approach, the first inquiry when deciding whether a new habitual residence has been acquired is: did the parents demonstrate a shared intention to abandon the former habitual residence. *Id*. at 1075. This intent could develop during the course of the stay and need not be settled at the time of departure.  *Id*. The second inquiry under the <u>Mozes'</u> rationale is whether there has been a change in geography for an "appreciable period of time" that is "sufficient for acclimatization." *Id*. at 1067 (citing <u>Federer v. Evans-Federer</u>, 63 F.3d 217, 224 (3rd Cir. 1995)).[6]  These are questions of fact to which appellate courts grant deference to the district court.  *Id*. at 1075-76.

Following <u>Mozes</u>, cases raising issues regarding parental intent fall into three general categories. The first category deals with cases where there was a mutual settled intent to change habitual residence. In this situation, courts are likely to find that the child's residence has changed.  <u>Mozes</u>, 239 F.3d at 1076-77.  The second category consists of those cases where both parents intend the relocation to be temporary in which courts will not find a change in habitual residence if one parent decides to resettle in the temporary location.

---

[6] Other circuits have declined to make the issue of parental intent dispositive and have focused instead upon the degree of the child's settlement in determining the issue of habitual residence. *See* <u>Stern v. Stern</u>, 639 F.3d 449 (8th Cir. 2011); <u>Karkkainen v. Kovalchuk</u>, 445 F.3d 280 (3rd Cir. 2006); <u>Robert v. Tesson</u>, 507 F.3d 981 (6th Cir. 2007); <u>Friedrich v. Friedrich</u>, 983 F.2d 1396 (6th Cir. 1993).

*Id.* at 1077.  The third category under Mozes entails situations where parents agree to allow a relocation, but for an ambiguous or uncertain period of time. In these cases, it seems that the result centers on whether the stay was intended to be indefinite or whether there was a conflict in the parental intent. Where the intent points to an indefinite stay, courts have tended to find an abandonment of the prior habitual residence. *Id.*

Mozes further finds that parental intent cannot effect a change in the habitual residence "by wishful thinking alone," but that it must be accompanied by an actual "change in geography" plus an "appreciable period of time." *Id.* at 1079.  Furthermore, Mozes recognizes that despite a lack of uniform parental intent, a relocation to a different country for a longer period of time may result in such a degree of acclimatization that the child acquires a new habitual residence. *Id.* at 1078-79.

Applying the Mozes' rationale, and taking into account the evidence presented to the court at the trial and after accessing credibility, we find the instant case falls under the third category.  As such, the child's habitual residence immediately prior to his removal or retention was Puerto Rico and not Argentina due to the agreement reached by the parties in a notarized affidavit for an indefinite period of time at the time of the alleged wrongful retention.  Moreover, there was a change in geography and an appreciable period of time had elapsed. We explain.

The stipulated facts in this case, as confirmed by the testimonies of Petitioner and Respondent during the trial, show that on January 31, 2011, the parties traveled to Orlando for vacation, and then traveled with the child to Puerto Rico on February 4, 2011.  Since the

Lisandro Jonathan Darin v. Lua Cecilia Olivero-Huffman
Civil No. 12-1121 (CVR)
Opinion and Order
Page 16

parties traveled to Puerto Rico in 2011 and stayed voluntarily for a period of several months,

Respondent avers the child was not unlawfully removed. Respondent contends the proper

claim, if any, would be unlawful retention and not removal.

Upon arriving in Puerto Rico the parties and their child stayed, as they had done on

prior occasions for extended periods of time, in Respondent's mother house located in #514

Sagrado Corazón Street, San Juan.

Pursuant to the testimony of Petitioner, he traveled with Respondent and the child

to Puerto Rico in February 2011 for vacation purposes with the intent to return to

Argentina.[7]  However, it is uncontested that, while in Puerto Rico in the first half of 2011,

Respondent told Petitioner about her intentions to reside permanently in Puerto Rico with

the child. Petitioner avers this decision was against their original intent which was to return

to Argentina by mid March 2011.  Petitioner testified he felt deceived by Respondent who

had tried on a previous trip to Puerto Rico in 2010 to also stay in Puerto Rico with the child

without his consent and was exhibiting the same conduct in 2011.

In turn, Respondent testified that several times during her relationship with

Petitioner and, since the beginning of the relationship she told him and his family, about

her desire to live permanently in Puerto Rico with the child.  At times, Petitioner was in

agreement with Respondent's wish. This is evidenced by the fact that, as Respondent

testified, she traveled with Petitioner and the child to Puerto Rico on March 24, 2009 for

---

[7] Thus, at first glance, it could be argued that the visit to Puerto Rico was originally temporary and the habitual residence of the child was Argentina. However, the child's habitual residence immediately prior to his retention changed to Puerto Rico, as explained herein below.

Respondent to take advantage of a work opportunity in a movie, and they returned to Argentina on August 7, 2009.[8]  During their five (5) months stay in Puerto Rico at that time, Petitioner explored the opportunity of selling in Puerto Rico the metal products he produced in Argentina.  They in fact visited the Puerto Rico Agriculture Department. However, things did not work out and they all returned to Argentina.

Moreover, Respondent's intentions to reside in Puerto Rico are also shown by the fact that Respondent finished her dance therapy studies in Argentina in November 2009 and traveled with the child on January 19, 2010 under the terms of a power of attorney signed by the parties and she decided to remain in Puerto Rico in March 2010 and so informed Petitioner.  At that time, Petitioner confronted Respondent and he revoked the power of attorney he had given her to travel with the child because he did not trust Respondent any more. Eventually, Respondent returned with the child to Argentina. In late 2010, as stipulated, Respondent and her sister sold their apartment in Argentina.[9]

Thus, when the couple traveled to Puerto Rico in February 2011,  Petitioner was aware of Respondent's prior attempts to reside in Puerto Rico with the child and her intentions to do so.

Respondent testified that during the stay in 2011, she delayed her return to Argentina because she had a car accident and was waiting for her sister to come to Puerto Rico to spend time with her and develop a business for their mother.  During this period,

---

[8] This fact was stipulated by the parties in Docket No. 54, paragraph 9.

[9] Docket No. 54, paragraph 16.

Lisandro Jonathan Darin v. Lua Cecilia Olivero-Huffman
Civil No. 12-1121 (CVR)
Opinion and Order
Page 18

Respondent found two part time jobs in Puerto Rico[10], bought a car and the child was sharing with his maternal family where he lived with Petitioner and Respondent, including grandparents, a cousin about his age, among other family members. Petitioner took care of the child at the house while Respondent worked.  Petitioner made some attempts to start a business in Puerto Rico and he contacted a friend in Texas to try to start a business of selling used cars in Puerto Rico with no positive results. Petitioner also contemplated opening a restaurant in Puerto Rico. It is uncontested that, by mid March 2011, Respondent told Petitioner of her intentions to reside permanently in Puerto Rico with the child.[11] However, knowing already by mid 2011 that Respondent had intentions of residing in Puerto Rico permanently with the child, Petitioner left Puerto Rico to Argentina on July, 2011 after subscribing and signing with Respondent an affidavit on July 7, 2011, before Notary Public José Guillermo Pérez Ortíz.  (Joint Exhibit VIII).  Petitioner testified he had to leave Puerto Rico because the family business in Argentina was falling apart and his visa was about to expire.

The affidavit (Joint Exhibit VIII) which was signed in Puerto Rico by Petitioner and Respondent before a Notary Public, in its pertinent parts reads as follows:

> WE, LUA CECILIA OLIVERO-HUFFMAN, of legal age, single, employee and a resident of San Juan, Puerto Rico, and LISANDRO JONATHAN Darín, of legal age, single, property owner, and a resident of Buenos Aires, Argentina, under the most solemn oath do hereby declare:

---

[10] One part time job was as a sales person in a furniture store and the other part time job was at the front desk at a hotel.

[11] Docket No. 54, paragraph 18.

3.      Lisandro Jonathan Darín, for reasons beyond his will, must leave the country.

4.      The son of the parties, Lucio Alejandro Angel Darín-Olivero, is not being abandoned by his father since he will be in charge of all of the events relative of the minor, who will be under the care and supervision of his mother, Lua Cecilia Olivero-Huffman, with the absence of his father Lisandro Jonathan Darín.

5.      For the best well-being of the minor, Lisandro Jonathan Darín authorizes Lua Cecilia Olivero-Huffman to make all the necessary arrangements on behalf of their son in the areas of education, health, and in everything that may be necessary for the best interests and well-being of the minor.

6.      The son of the parties, Lucio Alejandro Darín-Olivero, is authorized to travel with either of his parents in the absence of the other to any country in the world, returning to the same when deemed convenient, until he reaches legal age.

9.      That what is declared is the truth and we sign the affidavit for all pertinent legal effects voluntarily and in an informed manner, under no type of intimidation, threat or coercion.

The content of the affidavit, as corroborated by Petitioner's testimony at trial, shows that Petitioner voluntarily and without intimidation, threats or coercion signed the affidavit. Petitioner has not raised any claims of coercion or threats in signing the affidavit and the affidavit has not been challenged in any way. No evidence was presented either that Petitioner was not competent when he signed the affidavit.

The clear language of the affidavit shows a different residence at the time of signing the document for Petitioner and Respondent. As a matter of fact, Respondent identifies

herself as resident of San Juan, Puerto Rico and Respondent as resident of Buenos Aires, Argentina.

Moreover, the affidavit demonstrates that, before leaving to Argentina on July 2011, Petitioner voluntarily left the child in Puerto Rico "under the care and supervision of his mother, Lua Cecilia Olivero-Huffman, with the absence of his father Lisandro Jonathan Darín." Petitioner further authorized Respondent, for the best well-being of the child, "to make all the necessary arrangements on behalf of their son in the areas of education, health, and in everything that may be necessary for the best interests and well-being of the minor." Petitioner also agreed for the child "to travel with either of his parents in the absence of the other to any country in the world, returning to the same when deemed convenient, until he reaches legal age."

Petitioner testified he signed the affidavit because Respondent told him the document was needed for her to be able to provide medical assistance to the child and for her to travel with the child during the father's absence. Petitioner testified that in signing the affidavit he was not abandoning the child and that the child's mother was going to take care of him in his absence. To this effect, Respondent testified that their agreement and intent in signing the affidavit was for her to stay in Puerto Rico with the child and Petitioner would travel to Argentina for a period of time and would come back to Puerto Rico.

After Petitioner left Puerto Rico on July 2011 the relationship with Respondent deteriorated.[12]  However, the parties stipulated and so recognized in their testimonies that, since Petitioner's departure to Argentina he had continuous and frequent communication with his son by the use of telephone and internet.[13] Nonetheless, after Petitioner left on July 2011 to Argentina, he admitted not making any child support payments to Respondent for the benefit of the child.  Petitioner testified he sent some packages from Argentina to the child in Puerto Rico with clothing, tennis shoes and other miscellaneous items.

Thus, Petitioner (as argued by Respondent and as shown by the evidence) was exercising his joint custody rights with Respondent when, prior to his departure from Puerto Rico to Argentina, he voluntarily signed with Respondent an uncontested agreement before a Notary Public, in which Petitioner expressly consented to the child staying in Puerto Rico for an *indefinite* period of time, under the care and supervision of Respondent. During cross-examination, Petitioner admitted the terms of the affidavit were for an indefinite amount of time.

In Levesque v. Levesque, 816 F.Supp 662 (D. Kan. 1993), the court ruled that an indefinite period of relocation was found to constitute a change in the child's habitual residence.  The court found that the parent mutually agreed that both mother and child

---

[12] It is uncontested that during the relationship between Petitioner and Respondent, mainly after the child was born, they had several separations in which they resided at different locations in Argentina. The couple attempted reconciliation. *See* Docket No. 54.

[13] Docket No. 54, paragraph 22.

would return to Germany for "some" period of time, and this was sufficient to demonstrate an intention to alter the child's habitual residence.

Additionally, in Slagenweit v. Slagenweit, 841 F.Supp 264 (N.D. Iowa 1993), the court concluded the child's mother, who resided in Germany, failed to show by preponderance of the evidence that Germany was the child's place of habitual residence prior to the alleged wrongful retention of the child by the father in Iowa, for purposes of the Convention on Civil Aspects of International Child Abduction. The parties, as in the instant case, had mutually agreed that the child would remain in the custody of the father for indefinite period of time in Iowa, substantial time passed from the removal to the beginning of the allegedly wrongful retention, and the child had become habitual resident of Iowa by her substantial involvement with his father, his girlfriend and the Iowa medical community.

The evidence presented at the trial exhibits the affidavit is the last document the parties signed in relation to the child.  No evidence to the contrary was presented.  The terms of the affidavit are unambiguous.  As such, the affidavit clearly shows the parents' last shared intent in determining habitual residence. Koch, 450 F.3d at 715 (same); Gitter, 396 F.3d at 131-133. It is hard to think of a more formal acquiescence or alternatively a waiver of Hague Convention rights than voluntarily entering into an agreement signed before a Notary Public as the one signed in this case.[14]

Moreover, we find that by the time of the alleged unlawful removal or retention, substantial time had passed inasmuch as the child had been in Puerto Rico for six (6)

---

[14] See Journe v. Journe, 911 F.Supp. 43, 47-48 (D.P.R. 1995) (voluntary dismissal of custody action was treated as a waiver of the Hague Convention rights).

Lisandro Jonathan Darin v. Lua Cecilia Olivero-Huffman
Civil No. 12-1121 (CVR)
Opinion and Order
Page 23

months, and there was a clear change in geography. The child was attending a YMCA camp during this period, was provided with medical insurance[15], had a pediatrician, was receiving medical assistance, began receiving early education and had substantial involvement with his mother (who had two part-time jobs) and other maternal family members in the house were he was accustomed to staying in Puerto Rico for prolonged periods of time since his birth at 514 Sagrado Corazón Street.[16]

As stipulated, during the 2011-2012 academic year, the parties' child attended school at "Escuela del Pueblo Trabajador" in Río Piedras, Puerto Rico, and is enrolled for the 2012-2013 school year at the same school.[17] The child is presently taking capoeira and swimming lessons.

Moreover, we cannot obviate the fact as stipulated that petitioner left Puerto Rico on July 2011 and filed on December 19, 2011 the application to request remedies under the Hague Convention and ICARA before the competent authorities in Argentina.[18] Thus, Petitioner failed for five (5) months to make any meaningful effort to obtain return of the

---

[15] *See* Joint Exhibit IX. As stipulated, at present, the child is covered by the Puerto Rico government health insurance program.

[16] As stipulated, the parties traveled with the child to Puerto Rico on December 11, 2008, and returned to Argentina on February 9, 2009. The parties again traveled with the child to Puerto Rico on March 24, 2009 for Respondent to take advantage of a work opportunity, and they returned to Argentina on August 7, 2009. Respondent also traveled to Puerto Rico on January 29, 2010 under the terms of the Power of Attorney signed by the parties until April 2, 2010. On the three (3) occasions, while in Puerto Rico, they stayed at Respondent's mother's house located in #514 Sagrado Corazón Street, San Juan. (Docket No. 54, paragraphs 8 and 9). *See* also Joint Exhibits II and III (copies of the child's Argentinian and American passports).

[17] Docket No. 54, paragraph 27.

[18] Docket No. 54, paragraph 23.

minor child and failed to pay any child support during this period, thus, consenting to the alleged retention in Puerto Rico.[19]

Therefore, there was no unlawful removal or retention and the child's habitual residence changed to Puerto Rico upon Petitioner's unambiguous consent for the child to remain in Puerto Rico indefinitely under the care and supervision of Respondent.

Finally, we note that any intention or hope that Petitioner in this case may have had of Respondent's return with the child in the future to Argentina at any given point in time (before or after the signing of the affidavit on July 7, 2011) does not prevent a new residence from being established.  The hope has to be viewed in light of what the family actually did and the larger scope of what the parents intended. Koch, 450 F.3d at 717-19 (Parents' shared intent, perhaps better described as a hope, at the moment of departure and for some period thereafter, to return someday to the United States had to be viewed in light of what the family actually did and the larger scope of what the parents intended, for purposes of determining "habitual residence" under the Hague Convention and the ICARA).

It seems that, based on the testimonies of Petitioner and Respondent, their intention when they left Argentina in January 31, 2011 to travel to Orlando and Puerto Rico on vacation was to return to Argentina, as they had done on the prior occasions they had traveled to Puerto Rico.  However, as above explained that intention changed during their stay in Puerto Rico and by the signing of the affidavit.  As the Mozes' court noted, one need

---

[19] See In re Ponath, 829 F.Supp. 363, 368 (D.Utah 1993) (petitioner who assented to mother's return to the United States from Germany with their child and who failed, for almost six months, to make any meaningful effort to obtain return of the minor gave "consent" to the removal within meaning of the Hague Convention).

not have a settled intention at the moment of departure; the intention may coalesce during the course of a stay abroad originally intended to be temporary. 239 F.3d at 1075.  In the instant case, Petitioner and Respondent unequivocally agreed on July 2011 that their child would remain in Puerto Rico for an indefinite, extended period of time for a settled purpose as described in the affidavit (Joint Exhibit VIII).  Thus, at the time Respondent allegedly removed or retained the child in Puerto Rico, Petitioner had acquiesced/consented and, thus, the settled purpose was still in force.

Hence, taking into account the stipulated facts and the evidence presented at the trial after accessing credibility, we conclude (under the Mozes' approach) that,  a new habitual residence in Puerto Rico was acquired based on the parents' shared intention in signing the affidavit in which it was agreed the child was going to remain under the care and supervision of Respondent in Puerto Rico for an indefinite period of time. Thus, a new habitual residence was acquired by the child in Puerto Rico. Moreover, there has been a change in geography for an "appreciable period of time" that is "sufficient for acclimatization."

In view of the above, we conclude Petitioner has failed to meet his burden and the alleged removal or retention of the child was not wrongful under the meaning of the Hague Convention.  Because the parties' shared intent, as evidenced by the affidavit subscribed by both, was for the child to remain in Puerto Rico for an indefinite period of time under the care and supervision of Respondent, the court finds the child was a habitual resident of Puerto Rico at the time of the claimed removal or retention.  Because the child was

Lisandro Jonathan Darin v. Lua Cecilia Olivero-Huffman
Civil No. 12-1121 (CVR)
Opinion and Order
Page 26

_____

habitually a resident in Puerto Rico, Respondent's alleged removal or retention of the child

in Puerto Rico was not wrongful and the court need not engage in any further analysis.[20]

        As such, the Puerto Rico courts have jurisdiction to determine permanently the best

interests of the child and to rule on any controversies between the parties regarding

parental custody and visitation rights.


                                    **CONCLUSION**

        In light of the foregoing, the "Verified Petition for Return of Child to Petitioner and

Petition for Immediate Issuance of Show Cause Order to Respondent" against Respondent

(Docket No. 1) is DENIED.  All the claims are DISMISSED WITH PREJUDICE.

        Judgment is to be entered accordingly.

        IT IS SO ORDERED.

        In San Juan, Puerto Rico, this 16 [th] day of August of 2012.


                            s/CAMILLE L. VELEZ-RIVE
                            CAMILLE L. VELEZ-RIVE
                            UNITED STATES MAGISTRATE JUDGE


_____

        [20] For the sake of the argument, and in the alternative, if we were to determine that Petitioner met his burden
by preponderance of the evidence of establishing the elements of wrongful removal or retention because the child's
habitual residence was Argentina (matter we deny), we note that --based on the evidence presented at the trial-- the
outcome, that there was no unlawful removal or retention of the child, would have been the same inasmuch as Respondent
proved, by preponderance of the evidence, her defense that Petitioner consented to or subsequently acquiesced in the
removal or retention of the child by signing the affidavit at Joint Exhibit VIII, as above discussed.